*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-0682**

In re the Matter of:

Evelyn M. Marsh, petitioner,
Respondent,

vs.

Eric Nyepon,
Appellant.

**Filed March 18, 2024**
**Affirmed**
**Bratvold, Judge**

Hennepin County District Court
File No. 27-DA-FA-23-660

Karen R. Cole, Law Office of Karen Cole, Minneapolis, Minnesota; and

Stacy M. Wright, Stacy Wright Family Law and Mediation, Chartered, Brooklyn Park, Minnesota (for respondent)

Eric Bond Anunobi, Eric Bond Law Office, PLLC, Minneapolis, Minnesota (for appellant)

        Considered and decided by Wheelock, Presiding Judge; Smith, Tracy M., Judge; and Bratvold, Judge.

**NONPRECEDENTIAL OPINION**

**BRATVOLD**, Judge

        Appellant seeks review of an order for protection (OFP), arguing that the district court (1) found facts unsupported by the record evidence, (2) determined that appellant

submitted false evidence and failed to allow appellant to offer rebuttal testimony, and (3) abused its discretion by granting an OFP. Because the record evidence supports the district court's factual findings, appellant did not seek to offer rebuttal evidence, and the district court did not abuse its discretion by granting the OFP, we affirm.

## FACTS

Respondent Evelyn M. Marsh (wife) petitioned for an OFP against appellant Eric Nyepon (husband) on February 3, 2023. Wife and husband married in 2012 and resided together from 2012 to October 2022. Husband and wife are Liberian and participate in the Liberian-Christian community. Husband is a pastor, and wife is a gospel singer.

In her sworn petition, wife detailed abuse that occurred from 2013 to 2022. Wife's petition attested that, in 2013 and 2018, she was pregnant and husband "beat [her] so bad that [she] miscarried." In 2014, husband "grabbed onto [wife's] body" and injured her hand. In 2015, husband punched wife's face twice. Wife sought medical treatment for her injuries but "lied to the medical staff to protect [husband] because [she] feared what [husband] would do to [her] if [she] told hospital staff what really happened." In 2018, husband "sat at the bedroom door with a belt and told [wife she] wasn't going anywhere," then "grabbed," "shoved," and "hit" her. In 2019, wife woke up around 2:00 a.m. and saw husband "standing over [her] holding a knife at his side." When wife asked husband "what he was doing and why he [had] the knife," husband said, "Can't I admire my wife?"

In October 2022, husband accused wife of infidelity and told wife during an argument, "If I can't have you, [nobody] else will. I will end your life one day." A few days later, husband again accused wife of infidelity. Husband "grabbed onto [wife] by [her]

2

arm," then "pulled [her] arm forcefully behind [her] back, to the point where [she] believed that [husband] was trying to break [her] arm." After this, wife "stopped living with" husband and "started staying at safe places" where husband could not find her. Wife attested that, after she moved out, husband started stalking her by "showing up at [her] home, church, and job, calling [her] non stop from multiple phone numbers, [and] posting on social media about [her]." Wife also attested that husband damaged her property throughout their marriage, including her laptop, eyeglasses, vehicle, television, and the doors in their home.

Based on wife's sworn petition, the district court issued an emergency ex parte OFP in her favor against husband, and husband requested a hearing. The district court held an evidentiary hearing on March 10, 2023, during which the district court heard testimony from wife, husband, wife's brother, and several of their friends and community members. The district court also received as exhibits many photographs showing wife's injuries dating from 2013 to 2016. Following the hearing, the district court issued an OFP directing that husband "must not commit acts of domestic abuse against [wife]," must not contact wife, and must stay a "reasonable distance away from [wife's] residence." The OFP is effective for two years, until March 15, 2025. Husband appeals.

**DECISION**

A district court may issue an OFP based on a finding of domestic abuse. Minn. Stat. § 518B.01, subds. 4, 6 (2022). "Domestic abuse" includes "physical harm, bodily injury, or assault" and "the infliction of fear of imminent physical harm, bodily injury, or assault." *Id.*, subd. 2(a) (2022). "[Appellate courts] review the decision to grant an OFP for an abuse

3

of discretion. A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *Thompson v. Schrimsher*, 906 N.W.2d 495, 500 (Minn. 2018) (quotation omitted).

Husband raises three issues in his brief submitted to this court. Husband argues that (1) the record evidence does not support the district court's factual findings, (2) the district court improperly determined that husband manufactured false evidence without allowing him to offer rebuttal testimony, and (3) the district court abused its discretion by granting an OFP. Wife responds to each issue. First, wife contends that the district court determined that she testified credibly about the abuse that occurred from 2013 to 2022 and that this court should defer to that credibility determination. Second, wife argues that the record supports the district court's finding that husband submitted false evidence. Third, wife contends that the district court did not abuse its discretion by issuing an OFP.

We address each issue in turn.

## I. The record evidence supports the district court's findings of fact.

Husband argues that the district court did not consider husband's testimony and that the record evidence does not support the district court's findings of abuse from 2013 to 2022. We discuss these arguments separately.

### A. The district court considered husband's testimony and found it not credible.

When considering a district court's decision whether to grant an OFP, "[w]e give deference to the 'opportunity of the trial court to assess the credibility of witnesses.'" *Id.* at 500-01 (quoting *Sefkow v. Sefkow*, 427 N.W.2d 203, 210 (Minn. 1988)). Appellate courts

will "neither reconcile conflicting evidence nor decide issues of witness credibility, which are exclusively the province of the factfinder." *Gada v. Dedefo*, 684 N.W.2d 512, 514 (Minn. App. 2004) (determining record evidence supported district court's decision to grant OFP).

Husband contends that the district court "gave much credibility to [wife's] case without considering or crediting the evidence provided by [husband]." It is true that the district court found wife's testimony credible and gave detailed reasons for this finding. The district court found (1) "[wife] provided detail with respect to each event," (2) her "testimony and exhibits portray[ed] a relationship punctuated with frightening and physically violent events," (3) her "testimony in court was consistent with [the] multiple events described in the Petition," (4) she "had photographic evidence that corroborated her testimony" and explained that she took photographs because, she said, "[I]f I die, I wanted my phone to speak for me," (5) she "called witnesses to the stand who corroborated [her] narrative," and (6) she "recalled precisely in what order events occurred and how she felt and to whom she reported her fears and injuries."

It is also true that the district court found husband's "testimony to be less credible with respect to" his claims that wife abused him. We defer to a district court's credibility determinations. *See id.* at 514-15 (deferring to the district court's determinations about the credibility of a petitioner for an OFP).

In short, we defer to the district court's credibility determinations about wife and husband. The district court considered husband's testimony and found it not credible or rejected it in favor of wife's credible testimony.

**B.    The record evidence supports the district court's findings of domestic abuse from 2013 to 2022.**

We review a district court's factual findings for clear error. *Id.* at 514. A finding is clearly erroneous if it is "manifestly contrary to" or "not reasonably supported by the evidence." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 221 (Minn. 2021) (quotation omitted) (describing the clear-error standard). "We defer to the district court's credibility determinations and do not reconcile conflicting evidence." *Butler v. Jakes*, 977 N.W.2d 867, 871 (Minn. App. 2022) (quotation omitted).

Husband challenges nine specific findings of fact by the district court, which we discuss in turn.

*First*, husband argues that the district court clearly erred in its findings about domestic abuse in 2013 because wife's testimony was uncorroborated. He also contends that the district court's findings are "illogical" because husband is "a responsible man and Pastor of a Church," not "a rapist who obtains sex by violence," and "[i]t doesn't make sense for a husband who wants a sexual favor . . . to seek to obtain same by violence."[1]

---

[1] Husband's brief includes unsupported assertions that we reject. He asserts that it is "illogical" for wife to claim that a husband would attempt to obtain sex by violence. He also argues that wife's testimony about abuse is not credible because she failed to file police reports and lied when seeking medical treatment. Husband's brief shows a misunderstanding of the nature of domestic abuse. Intimate-partner sexual violence and a fear of reporting domestic violence are common. *See* 2019 Minn. Laws ch. 16, § 1, at 1 (repealing Minn. Stat. § 609.349 (2018), the marital-rape exception to criminal sexual conduct); *State v. Grecinger*, 569 N.W.2d 189, 193, 197 (Minn. 1997) (affirming the district court's admission of evidence that "many battered women do not report the abuse out of fear for their safety, denial of the abuse, fear that no one will listen, or hope that the batterer will change").

Here, wife testified that she did not call the police because she was a Christian and from Liberia, so she was not comfortable calling law enforcement. Instead, she sought help

6

The district court found that, in February 2013, husband broke a laptop and hit wife after she rejected his sexual advances. Wife's testimony, which the district court found to be credible, supports the district court's findings. Wife testified that, in February 2013, she came home from a recording session at 1:00 a.m., was tired, and argued with husband, who "demanded that [she] have sex with him that night." Wife testified that husband then broke a laptop and hit her. Thus, the record evidence supports the district court's finding of domestic abuse in 2013.

*Second*, husband contends that the record does not support the district court's finding about whether wife physically assaulted husband after wife returned from Wisconsin. The district court found that husband's testimony about wife initiating the assault was not credible, describing his testimony as relating an incident in which he and wife had a "fight after [she] return[ed] from Wisconsin" and wife "jump[ed] on him . . . injured his wrist with her fingernails . . . and bit him." The district court reasoned that wife had no motive to physically attack husband and observed that wife is "physically much smaller than [husband]."

Husband emphasizes that he did not testify that this assault occurred after wife returned from Wisconsin. Husband is correct that he testified that this incident occurred after wife returned from a meeting at *church*, not after she returned home from *Wisconsin*.

---

from pastors and friends, some of whom testified. The district court considered husband's argument and wife's testimony and found that wife's "lack of contact with law enforcement" did not "diminish[]" the credibility of her testimony, which was otherwise supported by photos and other witnesses. Similarly, the district court rejected husband's argument about the lack of medical records. Thus, the district court considered and rejected husband's criticisms of wife's credibility.

This detail, however inaccurate, is not material to the district court's finding that husband's testimony about wife assaulting him is not credible. Thus, we ignore husband's argument about Wisconsin as harmless error. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored).

*Third*, husband argues that the district court erred in finding that, in 2014, husband grabbed wife's hand "with such force that it caused her hand to swell" after wife asked husband to stop frying fish in the same area of the house where she was providing childcare. Husband's brief to this court contends that (1) wife's testimony was inconsistent about whether she "fractured" or "broke[]" her hand; (2) "[i]t does not make sense that [husband] would attack [wife]" in these circumstances; (3) wife did not offer testimony from her "daycare helper," who was present during the incident; (4) wife's testimony did not show that husband was under the influence of alcohol; and (5) the photos wife submitted to show her injuries are "dissimilar" and do not specify the date the injuries occurred.

We reject husband's arguments because the district court's actual findings are supported by wife's testimony. The district court did not find that wife "fractured" or "broke" her hand, only that her hand was swollen after the assault. The district court also did not find that husband was under the influence of alcohol at the time of this incident. Similarly, husband's argument that wife should have offered testimony from her "daycare helper" is unavailing considering the district court's finding that wife's testimony was credible. *See Gada*, 684 N.W.2d at 514. Husband's argument about unspecified dissimilarities in the photographs of wife's injuries is also unpersuasive. An appellate court does not reconcile conflicting evidence. *Id*.

8

*Fourth*, husband argues that wife's testimony about a 2015 incident is uncorroborated, the photographs wife provided are "obscure and hazy," and the damage to her eyeglasses was inconsistent with being punched in the face. The district court found that, in 2015, husband punched wife, "causing her physical injury and breaking her eyeglasses." The record supports the district court's finding because wife testified that husband "punched [her] in the face," which broke her eyeglasses, and she submitted a photo of the broken glasses.

*Fifth*, husband argues that wife's pastor, L.A., provided testimony that is "erroneous" and "misleading" because he arrived at their home after wife's injuries occurred and wife showed her injuries to L.A.'s wife and not to L.A. The district court found that L.A. "testified that [wife] was beaten so badly by [husband] one evening . . . that she called [L.A.]," who came over with his wife. While at husband and wife's home, L.A. saw overturned furniture and L.A.'s wife saw wife's physical injuries. We conclude that the record evidence supports the district court's findings because L.A. testified that (1) wife called him, said that husband had hurt her, and asked L.A. to come over, (2) L.A. saw an overturned loveseat when he arrived, and (3) wife showed L.A.'s wife her injuries. Husband's arguments essentially ask us to reject L.A.'s credibility—a determination entrusted to the district court. *Id.*

*Sixth*, husband argues that the district court was "completely wrong" about H.B.'s testimony and "completely mischaracter[ized]" it because H.B. testified that he helped wife persuade husband to return home after he moved out and the district court did not mention this. The district court found that husband's "own witness, [H.B.,] testified that he was

9

present one time when [wife] was showing members of the community marks on her body from [husband's] abuse" and that he "was aware" of the abuse. The district court's finding is supported by the record evidence because H.B. testified that wife told him that husband psychologically and physically abused her and that wife showed her injuries to others. While the district court did not make findings about other portions of H.B.'s testimony, this omission is unrelated to whether the district court's findings are supported by the record.

*Seventh*, husband argues that the district court erred by finding that, in 2018, "the parties disagreed about hosting a person from Africa" and husband "barricaded [wife] in their bathroom and sat outside with a belt." This finding is supported by wife's testimony that she and husband disagreed about hosting a woman from Africa and that husband prevented her from leaving the apartment by standing outside the bedroom with a belt in his hand.

Although the district court's order and wife's testimony differ because the district court found that husband barricaded wife in the *bathroom* while wife testified that he barricaded her in the *bedroom*, this is a detail that is, at most, harmless error. Given that the record supports the district court's finding that husband barricaded wife in a room and sat outside with a belt, we ignore any inconsistency about *which room* as harmless. *See* Minn. R. Civ. P. 61 (requiring that a complaining party show that an error is prejudicial and that harmless error be ignored).

*Eighth*, husband argues that the district court erred by finding that, in 2019, wife woke up around 2:00 a.m. and saw husband standing "right next to her side of the bed with

10

a knife." Husband argues that this finding is unsupported by the evidence because (1) wife kept living with husband after this incident, (2) husband denied it happened, and (3) wife's petition averred that husband was stalking her, but she did not offer testimony about stalking at the evidentiary hearing. The district court's findings are supported by wife's testimony about waking up and seeing husband next to her holding a knife. Husband's arguments on appeal relate to wife's credibility and the weighing of conflicting evidence, which we do not second-guess on appeal. *Gada*, 684 N.W.2d at 514-15. It is accurate that wife did not testify about husband stalking her, but the district court made no findings about husband stalking wife.

*Finally*, husband argues that the district court erred in finding that, in October 2022, husband "accused [wife] of infidelity, and stated to her, 'I will end your life one day,'" and "bent [wife's] arm behind her back so hard that she was fearful and believed that [husband] would break her arm." Husband contends that these findings are clearly erroneous because (1) wife at first stated that she moved out before husband did, but later said that husband moved out before she did, (2) wife did not file the petition for an OFP until February 2023, and (3) the photographs wife submitted of her October 2022 injuries showed a hand and a wrist, not an arm. Husband's arguments relate to wife's credibility, which the district court assessed. Importantly, wife testified that husband accused her of infidelity in October 2022 and that he threatened her life. She also testified that husband tried to break her arm. Thus, even if we accept husband's description of the photographs, the district court's findings are supported by wife's testimony.

In sum, we reject husband's nine challenges to the district court's factual findings because the challenged findings are supported by the record evidence and thus are not clearly erroneous.[2]

**II. The district court did not err by determining that husband's evidence was false.**

Husband argues that the district court erred by determining that he "manufactured false evidence in support of his narrative without allowing [him] an opportunity for rebuttal." He contends that the district court did not allow husband "to call evidence" about whether photographs he offered were of injuries that wife inflicted on him. The district court found, based on wife's testimony, that the injuries were "sustained by another person" at husband's workplace. Because husband testified that the photos showed his own injuries that were inflicted by wife, the district court found that husband was "caught in a lie."

Husband introduced photographic exhibits that, he testified, showed injuries wife inflicted on him in 2013. Wife, when called as a rebuttal witness, testified that husband had sent her the same photos in 2019 and "stated that he got wounded on the job." Husband's attorney cross-examined wife following this rebuttal testimony but did not ask any questions about these photos. Nothing in the record suggests that husband sought to present his own testimony in rebuttal.

---

[2] This opinion does not address husband's arguments raised for the first time in his reply brief. Generally, issues not raised or argued in an appellant's principal brief cannot be raised in a reply brief. *Moorhead Econ. Dev. Auth. v. Anda*, 789 N.W.2d 860, 887 (Minn. 2010). Even so, based on our review, the factual findings husband challenges for the first time in the reply brief are supported by the record.

We conclude that wife's testimony supports the district court's findings that husband presented false testimony. First, although the district court found that the photos were of a coworker's injuries and wife testified that they showed husband's *workplace* injuries, any error is harmless and we ignore it. *See* Minn. R. Civ. P. 61 (requiring harmless error to be ignored). The district court's determination did not depend on whether the photographs depicted *husband's* or his *coworker's* injury. The district court determined that husband was "caught in a lie" because the photographs he offered into evidence did not depict injuries that *wife* caused in 2013, as he alleged.

Second, we reject husband's claim that the district court did not "allow[]" him to offer rebuttal testimony. The record does not reflect that husband asked to submit rebuttal testimony. Rulings about the exclusion of evidence may not be used to demonstrate error on appeal unless "the substance of the evidence was made known to the [trial] court by offer or was apparent from the context" and the ruling affected "a substantial right of the party." Minn. R. Evid. 103(a)(2).

Here, husband offered no rebuttal evidence. As a result, this issue was not raised and decided in the district court. Appellate courts rarely address issues not presented to and considered by the district court. *Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). Thus, we reject appellant's argument that the district court did not allow him to provide rebuttal evidence, because it is unsupported by the record and appears to be raised for the first time on appeal.

**III.    The district court did not abuse its discretion by issuing the OFP.**

Husband argues that the district court abused its discretion when it determined that wife met her burden of proof in support of an OFP. Because the district court's factual findings are supported by the record evidence and those findings show that husband committed several acts of domestic abuse against wife over the years from 2013 to 2022, we conclude that the district court did not abuse its discretion by granting an OFP.

**Affirmed.**